

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DSS:JS/SA
F.#
*271 Cadman Plaza East*
*Brooklyn, New York  11201*

June 3, 2011

<u>Via ECF and Hand Delivery</u>
The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:  United States v. Jorge Arbaje-Diaz,
           <u>Docket Nos. 10-CR-269 and 08-CR-115 (S-3)(NGG)</u>

Dear Judge Garaufis:

      The Government submits this letter in anticipation of the defendant's sentencing, scheduled for 12:00 p.m. on June 7, 2011, and in response to the defendant's letter of May 27, 2011 regarding the same.  The parties agree that the defendant faces an advisory range of imprisonment of between 210 and 262 months, as set forth in the parties' plea agreement and the U.S. Probation Department's Presentence Report ("PSR").  The defendant, however, submits that a downward departure or a non-Guidelines sentence would be appropriate in this case, arguing that his offense was "not violent"; alleged disparities exist between his sentence and the sentences his former co-defendants in the Southern District of New York received; and that he will be targeted for abuse in prison.  The government maintains that the Court should impose a sentence within the Guidelines range, for the reasons stated below.

I.    <u>Background</u>

    A.    Facts

      The defendant, Jorge Arbaje-Diaz, was a New York City Police Officer who joined a robbery crew in 2007.  Arbaje and his crew targeted narcotics traffickers and impersonated on duty police officers to gain entry into their homes and to stop their vehicles.  Once inside, armed with firearms, Arbaje and his accomplices would restrain their victims, oftentimes using Arbaje's department issued handcuffs, while the robbers searched for narcotics and cash.  During one of the robberies, which

Arbaje committed while on duty, Arbaje left his NYPD post to complete the robbery. During another, he and his cohorts held a child at gunpoint while they searched his family's home for drugs and money. Arbaje and his robbery crew members netted multiple kilograms of cocaine, heroin and marijuana as a result of these robberies within the Eastern and Southern Districts of New York. His participation in the robbery conspiracy lasted approximately two years. The PSR holds the defendant accountable for conspiring to commit seven Hobbs Act robberies in the Eastern and Southern Districts of New York. See PSR 13-14. The PSR also holds the defendant accountable for conspiring to distribute 8 kilograms of cocaine, 4 kilograms of heroin, and 87.5 pounds of marijuana. See PSR 21.

The defendant pled guilty on the EDNY indictment to Conspiracy to Commit Hobbs Act Robbery. His statutory sentencing range is 0-20 years. He also pled guilty on the EDNY indictment to Conspiracy to Distribute and Possess a Narcotic Substance. His statutory sentencing range is 10-life. The SDNY indictment was transferred to this District so that the defendant's outstanding indictments could be resolved by one District. Arbaje pled guilty under this indictment to Conspiracy to Commit Hobbs Act Robbery. His statutory minimum sentence is 0-20 years.

B. Sentencing Guideline Range

The parties agree that the PSR correctly calculates the defendant's offense level as 37. Because the defendant is in Criminal History Category I, this level results in a range of imprisonment of 210 to 262 months. We note that while at one point the defendant had submitted to the Probation Department factual objections to the PSR, they were withdrawn.

II. Argument

The defendant argues that, for a variety of reasons, he should receive a more lenient, non-Guidelines' sentence. Defendant's Let. at 1. However, in light of the disturbing facts of this case, the defendant's betrayal of the public trust, and the nature of the defendant's conduct, the government respectfully submits that the defendant's motion should be denied and the Court should impose a sentence within the applicable Guidelines range.

A. The Legal Standard

The Supreme Court has instructed that for sentencing, "the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 128 S. Ct. 586, 596 (2007); see United States v. Brown, 514 F.3d 256, 263-64 (2d Cir. 2008).

As the Supreme Court stated in <u>Gall</u>, a district court must give serious consideration to the extent of any departure from the Guidelines and must explain [its] conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications.  For although the Guidelines are advisory rather than mandatory, they are . . . the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.  <u>Id</u>. at 594.  From there, the "sentencing court must determine an appropriate sentence by considering the factors set forth in 18 U.S.C. § 3553(a):

> including, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence that is imposed to, inter alia, reflect the seriousness of the offense, . . . promote respect for the law, . . . provide just punishment for the offense[,] . . . afford adequate deterrence to criminal conduct[, and] . . . protect the public from further crimes of the defendant.

<u>Brown</u>, 514 F.3d at 263-64 (internal quotation marks and citations omitted).

The Guidelines represent the Sentencing Commission's application of the same § 3553(a) factors on a macro level that the district courts are required to apply on a micro level.  <u>See</u> <u>Rita v. United States</u>, 127 S. Ct. 2456, 2463 (2007) ("The upshot is that the sentencing statutes envision both the sentencing judge and the Commission, as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale.").  Therefore, if the sentencing court decides that a deviation from the benchmark sentence set forth in the Guidelines is warranted, it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.  [The Supreme Court] find[s] it uncontroversial that a major departure should be supported by a more significant justification than a minor one. <u>Gall</u>, 128 S. Ct. at 597.

As noted above, the established Guidelines range is 210-262 months' imprisonment.  Defendant Arbaje argues that he should receive a more lenient non-Guidelines sentence, based on one or all of the following factors:  his offense was "not violent"; alleged disparities between his sentence and the sentences his former co-defendants in the Southern District of New York received; and that he will be targeted for abuse in prison.  We submit that, whether considered alone or together,

these factors do not merit a downward departure or the imposition of a non-Guidelines sentence.

> B.  A Review of Factors Pursuant to 18 U.S.C. § 3553(a) Compels the Imposition of a Sentence Within the Guidelines Range

Before imposing sentence, this Court is required to consider not just the Guidelines, but also a number of factors under 18 U.S.C. § 3553(a), such as the nature and circumstances of the offenses; the defendant's history and characteristics, including the likelihood of recidivism; and the purposes of sentencing, including punishment and deterrence. Careful consideration of the Section 3553(a) factors in this case supports the imposition of a sentence within the applicable Guidelines range.

> 1.  The Nature and Circumstances of the Offenses

The nature and circumstances of the offenses warrant a Guidelines sentence. The defendant's crimes were deplorable. They warrant a very stiff punishment.

We dispute the defendant's characterization of his offense in his sentencing letter. The defendant repeatedly alleges that his involvement in this conspiracy was "not violent." Defendant's Let. at 10-12, 14. The defendant also claims that, according to the PSR and the government, the defendant "did not engage in any violence, torture, or assaults." Defendant's Let. at 10. This misconstrues the applicable statute, the PSR and the Government's position. The defendant's membership in a drug robbery crew was, by its very nature, violent. Also, the charge to which the defendant has pled guilty to, conspiracy to commit Hobbs Act robbery, is by definition violent. See United States v. DiSomma, 951 F.2d 494, 496 (2d Cir. 1991)(conspiracy to commit Hobbs Act robbery is a crime of violence because one of its elements is the actual or threatened use of force). In fact, the acts that the defendant committed as described in the PSR are extremely violent. In six of the robberies or attempted robberies, the defendant himself possessed a gun. See PSR 13-14. During four of the completed robberies, the defendant and his cohorts restrained or hog-tied the victims. The defendant brought his handcuffs to these robberies; he and his accomplices used them to restrain the victims at gunpoint. During one of the robberies, a child was held at gunpoint while the defendant and his accomplices searched for drugs. Thus, while the defendant did not torture or assault anyone during the robberies, it is wrong to say that these robberies were "non-violent."

We note that the defendant's Guidelines range would have been increased if any of his victims had been injured. Accordingly, the lack of injuries is already factored into his Guidelines range. Moreover, it would turn the sentencing Guidelines on their head if the defendant were given a lesser sentence because no one was tortured or assaulted, when he has received a Guidelines enhancement because his victims were physically restrained and because he used a firearm in multiple robberies. PSR 20, 21. In sum, the circumstances of the offense warrant a Guidelines sentence.

2. Deterrence

A Guideline sentence is also warranted to deter others from committing similar crimes. The defendant claims that a stiff punishment is not needed, because the publicity surrounding the defendant's arrest put other police officers on notice of the "potential sentence," Def. Let. at 13, and this alone suffices as a deterrent. This circular argument misses the point. The government submits that if other police officers see that the defendant received a more lenient sentence than the Guidelines provide, they might be inclined to risk breaking the law. In sum, the defendant should be sentenced in accordance with the Sentencing Guidelines to deter other officers from abusing their badge. In sum, the goal of deterrence calls for a Guidelines sentence in this case.

3. Respect for the Law

Another factor under 18 U.S.C. § 3553(a) that weighs in favor of a sentence within the Guidelines range is the need to promote respect for the law. 18 U.S.C. § 3553(a)(2)(A). We note that defendant Arbaje betrayed his oath as a sworn New York City police officer when he committed repeated armed robberies, but even this understates the disrespect Arbaje showed for the law. Arbaje had extensive training and experience as a police officer, and was under a solemn obligation to protect the citizens of New York. That oath required that he investigate drug dealers, not rob them. That oath required him to take drugs off the street, not personally profit from their resale. Instead, he embarked upon a path of stealing from the very citizens he was sworn to protect. Arbaje thus demonstrated a total disrespect for the law.

C. No Downward Departures are Merited

1. Susceptibility to Abuse While Incarcerated

The defendant alleges that because of his status as a former police officer and the attendant publicity surrounding his arrest, he will be uniquely susceptible to abuse while serving a

prison sentence and, therefore, the Court should grant him a downward departure. The defendant cites to Koon v. United States, 518 U.S. 81 (1996), in support of his position. His argument is without merit.

First, the Court should note that Arbaje's argument is at odds with the reasoning of Koon. In Koon, the Supreme Court held that susceptibility to abuse in prison is not a factor that the Sentencing Commission considered, and that it may therefore be a basis for a departure, but only if "the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." 518 U.S. at 94-96, 106-107, 109. The Court explicitly stated that "[t]he relevant question ... is not ... 'whether a particular factor is within the 'heartland' as a general proposition,' ... [b]ut whether the particular factor is within the heartland given all the facts of the case." 518 U.S. at 99-100. Thus, the question is not, whether, as a former police officer, Arbaje is entitled to consideration for a downward departure due to susceptibility to abuse in prison; but, rather, whether, based on the facts of this particular case, he has established a susceptibility to abuse that falls outside the heartland of cases.

Second, there is no support for the proposition that a defendant's status as a former officer, alone, should suffice to justify a downward departure on the basis of susceptibility to prison abuse. Notably, the Supreme Court itself relied on the sensational and intense publicity surrounding the Koon case, which involved the officers convicted of beating Rodney King, as its basis for upholding the district court's downward departure for the defendant, as opposed to Koon's status as a police officer. The courts of appeals that have addressed this issue post-Koon have specifically found that being a police officer is not sufficient in itself to find that susceptibility to abuse that falls "outside the heartland" of cases addressed by the Guidelines. See United States v. Winters, 174 F.3d 478, 485-486 (5th Cir. 1999); United States v. Colbert, 172 F.3d 594, 597 (8th Cir. 1999) (affirming refusal to depart based on susceptibility of police officer to abuse in prison, where district court found Koon distinguishable based on "torrent of national publicity" in that case); United States v. Rybicki, 96 F.3d 754, 759 (4th Cir. 1996).

As the Fifth Circuit reasoned in Winters, allowing a departure "on the basis that [the defendant] is a police officer would thwart the purpose and intent of the guidelines" because the Sentencing Commission intended that greater punishment be imposed for violations of civil rights under color of law - violations which are more likely to be committed by police officers. 174 F.3d at 486; see U.S.S.G. § H1.1(b)(1) (increase of 6 levels for offense involving violation of individual rights if

committed under color of law).  Similarly, the Fourth Circuit reasoned in Rybicki that granting departures for susceptibility to prison abuse on the basis of an offender's status as an officer would suggest that "law enforcement officers, as a class, are entitled to more favorable treatment under the Guidelines." 96 F.3d at 758. Finding that there was nothing to indicate that either Congress or the Sentencing Commission intended such a result, the Fourth Circuit rejected the argument.  Id.; see also United States v. Wilke, 156 F.3d 749, 753 (7th Cir. 1998) (addressing argument that child pornographers were more susceptible to abuse and holding that "[m]ere membership in a particular class of offenders that may be susceptible to abuse in prison does not merit a departure for vulnerability to abuse in prison"); United States v. Drew, 131 F.3d 1269, 1270 (8th Cir. 1997) (reversing departure based on defendant's offense status as a child pornographer); United States v. Kapitzke, 130 F.3d 820, 822 (8th Cir. 1997) (same).

Additionally, Arbaje has made no showing that the Bureau of Prisons would have to place him in solitary confinement to protect him or that it would be unable to adequately protect him. See United States v. Graham, 83 F.3d 1466, 1481 (D.C. Cir. 1996) ("[T]o qualify for a downward departure, a defendant's vulnerability must be so extreme as to substantially affect the severity of confinement, such as where only solitary confinement can protect the defendant from abuse"); see also United States v. Bissell, 954 F.Supp. 841, 846 (D.N.J. 1996) ("fear of being a target of 'special abuse in the prison system does not provide a factual basis for a downward departure"), affd. 142 F3.d 429 (3d Cir. 1998).  Arbaje has not complained of any abuse while he has been detained over the past two years in a Bureau of Prisons facility awaiting resolution of his case.

In fact, the Bureau of Prisons has informed the government that they would be able to adequately protect Arbaje while incarcerated without resorting to extended periods of solitary confinement.  The Bureau of Prison's Regional Counsel has informed the government that there are ways in which any potential threats to Arbaje's safety can be minimized or even negated.  The Bureau of Prisons has successfully housed former law enforcement officials in the past, providing them with secure conditions of confinement without subjecting them to disproportionally more restrictive conditions.

Furthermore, the defendant's argument flies in the face of his own requests during this case.  Arbaje repeatedly requested that this Court order the Bureau of Prisons to place Arbaje into general population.  If Arbaje were truly fearful of "abuse" because of his status, then he would not have asked to be placed into general population.  Tellingly, he has not claimed any abuse while in general population.

In sum, the defendant's request for a downward departure based upon any purported claims of susceptibility to abuse should be denied.

D.  Potential Sentence Disparities

The defendant further argues for a below Guideline sentence because his Southern District of New York ("SDNY") co-defendants received lesser sentences than he faces. The applicable statute provides that the sentencing court should "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6),(b). The defendant's criminal acts and his role significantly differ from his co-defendants on the SDNY indictment. The defendant admits that he was a "leader" in the SDNY case, but avers that he is only a "small fish" in his EDNY indictment. See Def. Let. at 14. The government submits that this does not accurately summarize the two indictments and the defendant's role in them. The SDNY indictment merely covers two months of criminal activity and one robbery. See PSR 4, 14. Contrasted with that is the EDNY indictment, which charged that the defendant committed or attempted to commit 6 robberies and conspired to distribute narcotics over a two year period. See PSR 13. The defendant was an active participant in the majority of the EDNY robberies; he wore a police uniform, carried a loaded firearm, used handcuffs to restrain his victims, and received narcotics and cash from the robberies. Id. The EDNY indictment charges criminal conduct which is significantly more serious, more violent, longer-lasting, and more lucrative than the SDNY indictment. If anything, the sentences of the co-defendants in the SDNY indictment suggest that Arbaje should receive a harsher sentence based on the larger number of robberies committed by Arbaje and the severity of Arbaje's conduct vis-a-vis the co-defendants who have already been sentenced. Moreover, the defendants in the SDNY indictment are not police officers who violated their oaths to protect the public.

Thus, the defendant's request for a downward departure based upon any potential sentence disparity should be denied.

III. Conclusion

The defendant actively participated in a two year long robbery spree. These robberies were well planned, required multiple accomplices, targeted high value narcotics traffickers and their families, necessitated the use of firearms, and often involved the physical restraint of their victims, including an innocent child. His motivation was simple greed. The defendant's participation was not minimal; it was grave, crucial to the success of the criminal venture and sustained over a two year period. In fact, it was through the defendant's badge that

he and his accomplices were able to stop the cars of his victims and enter their homes. The defendant committed this string of vicious robberies at the very same time he had sworn an oath to uphold the Constitutions of the United States and the State of New York. He violated his solemn oath to protect and serve the citizens of New York.

      Given the gravity of his crimes, and in consideration of all the factors set out in 18 U.S.C. § 3553(a), the Government respectfully submits that a sentence within the Guidelines range of 210 to 262 months would be appropriate in this case.

                                Respectfully submitted,

                                LORETTA E. LYNCH
                                United States Attorney

                By:        /S/
                                Jeremy Shockett
                                Special Assistant U.S. Attorney
                                Shreve Ariail
                                Justin Lerer
                                Assistant U. S. Attorneys
                                (718) 254-6616

cc: Priya Chaudry, Esq. (By Email and ECF)